## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

UNITED STATES OF
AMERICA

v.

CHESTER RAY
SLAUGHTER.

CRIMINAL ACTION FILE
NO. 4:10-CR-24-01-HLM

## ORDER

This case is before the Court on Defendant's Motion to

Suppress Statements [10], Defendant's Motion to Suppress

Illegally Seized Evidence [11], the Non-Final Report and

Recommendation of United States Magistrate Judge Walter

E. Johnson ("Report and Recommendation") [27], and

Defendant's Objections to the Report and Recommendation

[29].

## I. Standard of Review for a Report and Recommendation

28 U.S.C.A. § 636(b)(1) requires that in reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed · findings or recommendations to which objection is made." 28 U.S.C.A. § 636(b)(1). The Court therefore must conduct a de novo review if a party files "a proper, specific objection" to a factual finding contained in the report and recommendation. Macort v. Prem, Inc., 208 F. App'x 781, 784 (11th Cir. 2006); Jeffrey S. by Ernest S. v. State Bd. of Educ., 896 F.2d 507, 513 (11th Cir. 1990); United States v. Gaddy, 894 F.2d 1307, 1315 (11th Cir. 1990); LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir. 1988). If no party files a timely

2

objection to a factual finding in the report and recommendation, the Court reviews that finding for clear error. Macort, 208 F. App'x at 784. Legal conclusions, of course, are subject to de novo review regardless of whether a party specifically objects. United States v. Keel, 164 F. App'x 958, 961 (11th Cir. 2006); United States v. Warren, 687 F.2d 347, 347 (11th Cir. 1982).

## II. Factual Background

### A. Defendant's Investigation and Arrest

An unknown individual responded to a Craig's List Causal Encounters listing, purportedly posted by two girls, ages fourteen and fifteen, seeking someone to buy them beer. (Hr'g Tr. Dated Aug. 30, 2010 ("Tr. I") at 30-31, 33,

3

36-37, 39.)[1] This individual then engaged in Internet and telephone communications with undercover law enforcement officers, who had posted the request. (Id. at 32-33.) Those conversations culminated in the individual agreeing to rent a motel room in order to meet with the "girls" and to bring beer and condoms with him. (Id. at 6, 39.)[2] The individual and the "girls" all agreed to rendezvous at a Hardee's parking lot before going to the motel room. (Id.)

On May 7, 2010, however, the individual spoke with the undercover officer who was posing as one of the girls via

---

[1]Before entering the Casual Encounters listings, users are warned that the webpage is intended for persons eighteen years old and older. (Tr. I at 31-32.)

[2]During the communications at issue, the individual agreed to bring condoms to the meeting after the "girls" told him, "We don't want to get pregnant." (Tr. I at 39.)

4

telephone and informed her that he was in the motel room.

(Tr. I at 6, 33, 46.) The individual requested that the "girls"

meet him at Room 210 of the Super 8 Motel in Ringgold,

Georgia. (Id. at 6-7, 38.) Five or six law enforcement

officers, including Detective Sergeant David Lee Scroggins

of the Rossville Police Department, Special Agent ("SA")

Hillman with the Federal Bureau of Investigation ("FBI"), and

Detective Barry Woods of the Dalton Police Department,

then traveled to Room 210 to arrest its occupant.[3] (Id. at 4-

6, 10.)[4]

---

[3]The officers had not yet identified the target of their investigation and consequently did not have an arrest warrant. (Gov't Resp. at 10 n.4; Tr. I at 35.) Similarly, the officers did not have a search warrant for Room 210 or for the automobile driven by the room's occupant. (Tr. I at 35.)

[4]Detective Scroggins is assigned to the Northwest Georgia Task Force of the Innocent Images National Initiative (the "Task Force"). (Tr. I at 4.) The Task Force investigates Internet crimes

5

At approximately 5:19 p.m., the officers arrived at the Super 8 Motel in Ringgold, stood outside Room 210 with their backs against the wall, and knocked on the door. (Tr. I at 7, 34; Hr'g Tr. Dated Nov. 29, 2010 ("Tr. II") at 16; Def.'s Ex. 3 (consisting of chronological time-stamped photos documenting Defendant's arrest and search).) The officers had their weapons drawn and were wearing bulletproof raid vests emblazoned with the words "Police" or "FBI" and badge patches. (Tr. I at 8, 35.) When Room 210's occupant opened the door, SA Hillman stated, "We're here to take you into custody for responding to meet with children." (Id. at 7-8, 32-35.)

---

and other crimes against children, including investigating individuals who attempt to meet with, or collect pornographic images of, children over the computer. (Id.)

The officers immediately stepped into the motel room without the occupant's permission, took the occupant to the floor, and handcuffed him behind his back. (Tr. I at 9-10, 34-35, 42.) SA Hillman then told the individual whom he had just arrested that the officers did not want to embarrass him or to publicize his arrest, but preferred that he cooperate with them. (Id. at 29-30, 34, 46-47.)[5]

## B. Search Of Room 210 And Defendant's Vehicle

After searching Defendant and the immediate area within Defendant's reach for weapons, the officers permitted Defendant to stand up and move around. (Tr. I at 10-11, 15-16, 41-42.) Detectives Scroggins and Woods did not give Defendant his Miranda rights at that time, but asked

---

[5]At some point early in this citizen-police encounter, officers learned that the person they had arrested was Defendant.

7

Defendant for consent to search Room 210 and his vehicle, which Defendant had driven to the motel. (Id. at 10-11, 36, 40.) According to Detective Scroggins, the officers made no threats or promises to Defendant to obtain his consent. (Id. at 11-12.) Detective Scroggins further recalled that Defendant appeared alert and sober, and understood the questions asked of him. (Id.)

The detectives presented Defendant with a form the size of a business card titled, "Consent Search Warning," and announced that they sought permission to search Room 210 of the Super 8 Motel and Defendant's vehicle. (Tr. I at 11-13; Gov't Ex. 1.) Detective Woods read the contents of the card to Defendant, including the warning that Defendant had the right to refuse the officers' request

8

to search his vehicle and the motel room, and the warning that anything found during those searches could be used against Defendant. (Tr. I at 13-14.) Detective Woods then asked Defendant, "Do you understand each of the rights that I've explained to you?" (Id. at 14.) Defendant acknowledged the above rights and stated that he understood them. (Id. at 14, 16.) Neither Defendant nor Detective Woods wrote anything on the portion of the card that sets forth the same question. (Gov't Ex. 1; Tr. I at 40.) Similarly, Defendant and Detective Woods failed to complete the portion of the card that states, "Understanding these rights, are you willing to allow me to search your __." (Gov't Ex. 1; Tr. I at 40-41.)

9

At 5:27 p.m., Defendant and Detective Woods both signed the form. (Tr. I at 14-15, 23; Gov't Ex. 1 (reflecting date and time documented below signature line).) Defendant was not wearing his glasses and was handcuffed in the front. (Tr. I at 41.) Based on time and date-stamped photographs taken during Defendant's arrest and the subsequent search, officers began searching Room 210 and the closed containers therein, including the refrigerator and a plastic bag, before Defendant signed the search consent form. (Compare Tr. I at 15, with Tr. II at 4-6, 11-22 (discussing picture taken at 5:20 p.m. showing contents of

10

refrigerator).)[6] The officers, however, observed items in

plain view while in the motel room. (Tr. I at 15, 36-37.)

Defendant did not request an attorney, and did not ask

the officers to stop or limit their search of Room 210 or his

vehicle. (Tr. I at 16-17.)[7] After those searches, the officers

transported Defendant to the Catoosa County Sheriff's

Office. (Id. at 19-20.)

---

[6]The Government has agreed not to present the evidence that
the officers found in closed containers in Room 210, (Gov't Ex. 2,
Items 1-4 & 6-7), or any related testimony, at trial. (Gov't Resp. 15
n.6.) The Government, however, seeks to admit items found in
plain view and in Defendant's vehicle, which the officers searched
after Defendant gave consent. (Id.)

[7]Detective Scroggins testified that Defendant observed the
search of his automobile from a police transport vehicle. (Tr. I at
17-18, 42-43.) The officers found an envelop containing assorted
papers in Defendant's car. (Id. at 19.)

11

## C. Defendant's Custodial Statement

At 6:00 p.m. on May 7, 2010, Detective Scroggins met

with Defendant in an administrative room at the Catoosa

County Sheriff's Office. (Tr. I at 19-20, 26.)[8] Before giving

Defendant his Miranda warnings, Detective Scroggins made

the following statement:

When we were at the hotel, Agent Hillman told you that we're not here to embarrass you or to make this stuff public information. In fact that's the furtherest [sic] thing from our desires. Okay. And uh, I'm just going to be absolutely honest with you, it's not because we care a whole lot about Chester. It's because we don't want it to get in the way of us catching the next one. Okay. And we don't want it on the media and we don't want it in

_____

[8]Before the interview, Detective Scroggins prepared a Miranda waiver form for Defendant. (Tr. I at 20-23, 26.) Based on Defendant's responses, Detective Scroggins noted on the form that Defendant graduated from high school after completing the twelfth grade, and that Defendant reads and writes well. (Id. at 23-24, 26-27; Gov't Ex. 3 (Miranda waiver form).)

12

the news and we don't . . . the fewer people who know about this for us the better. In that vein, we hope you will be cooperative with us and you have been so far and I expect you will continue to be.

(Gov't Ex. 4 (videotaped interview), at 5:52-6:35; Tr. I at 29-30.)[9]

Detective Scroggins then unhandcuffed Defendant and read the Miranda form to him, explaining each right. (Tr. I at 20-22, 26-27, 40.) Defendant asked for his eye glasses, and read and signed the form; Defendant did not ask any questions of Detective Scroggins, state that he did not understand the form or Detective Scroggins's explanation, ask to speak with an attorney, or ask to stop the interview.

_____

[9] The officers videotaped Defendant's Miranda waiver and interview, and portions of that recording were played during the August 30, 2010 evidentiary hearing. (Tr. I at 24, 26-30; Gov't Ex. 4.)

(Id. at 22-23, 27-29; Gov't Exs. 3 & 4.) SA Hillman signed the form as a witness, indicating that those rights were reviewed with Defendant. (Tr. I at 23, 28.)

Detective Scroggins and SA Hillman interviewed Defendant for approximately one hour, and Defendant did not seek to end the interview earlier. (Tr. I at 20, 28.) Defendant remained unrestrained during the custodial interview. (Id. at 20, 27.) Additionally, the officers made no threats or promises to Defendant before he signed the Miranda waiver form, and Defendant had access to a rest room and water during the interview. (Id. at 20, 22, 28.)

## III. Procedural Background

On June 1, 2010, a federal grand jury sitting in the Northern District of Georgia returned a two-count Indictment

14

against Defendant concerning conduct allegedly occurring in this District. Count One alleges that, beginning on April 28, 2010, and continuing until May 7, 2010, Defendant used a computer connected to the Internet to attempt to entice an individual younger than eighteen to engage in sexual activity, in violation of O.C.G.A. § 16-6-4 and 18 U.S.C. § 2422(b). (Indictment Count One.) Count Two charges that, during the same time period, Defendant was required by Federal or other law to register as a sex offender and committed a felony offense involving a minor in violation of 18 U.S.C. § 2422, thereby also violating 18 U.S.C. § 2260A. (Indictment Count Two.)

On July 19, 2010, Defendant filed his Motion to Suppress Statements. (Docket Entry No. 10.) On that

15

same day, Defendant filed his Motion to Suppress Evidence. (Docket Entry No. 11.) On August 30, 2010, Judge Johnson held an evidentiary hearing concerning those Motions. (Docket Entry Nos. 15-16.) After Defendant's counsel moved to reopen the evidentiary hearing, Judge Johnson held a second evidentiary hearing on November 29, 2010. (Docket Entry Nos. 21-22.)

On March 1, 2011, Judge Johnson issued his Report and Recommendation. (Docket Entry No. 27.) Judge Johnson recommends that the Court grant in part and deny in part Defendant's Motion to Suppress Illegally Seized Evidence, and also recommends that the Court deny Defendant's Motion to Suppress Statements. (Id.)

Defendant has filed Objections to the Report and Recommendation. (Docket Entry No. 29.)[10] The time period in which Defendant could file a reply in support of his Objections has expired, and the Court consequently finds that this matter is ripe for resolution by the Court.[11]

## IV. Discussion

### A. Whether the Officers Had Probable Cause To Arrest Defendant

Probable cause to arrest without a warrant exists when officers have knowledge or reasonably trustworthy

---

[10]Defendant agrees with Judge Johnson's recommendation concerning suppression of the evidence found in the hotel room and car, and requests that the Court adopt that recommendation. (Def.'s Objections at 1.) Defendant, however, objects to Judge Johnson's recommendation that the Court deny Defendant's Motions with respect to evidence of his identity, prior conviction, and custodial statement. (Id.)

[11]By the Court's calculations, Defendant's reply in support of his Objections was due on April 5, 2011.

17

information sufficient to lead a person of reasonable caution

to believe that an offense has been or is being committed.

Beck v. Ohio, 379 U.S. 89, 91 (1964). In this case, the

Government has charged Defendant with, among other

things, attempting to sexually exploit a minor, in violation of

18 U.S.C. § 2422(b). 18 U.S.C. § 2422(b) provides:

> [w]hoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than ten years or for life.

18 U.S.C. § 2422(b) (emphasis added). Additionally, the

crime of attempt requires both (1) specific intent to commit

the crime, and (2) an objective action that constitutes a

18

substantial step toward commission of that crime. United States v. Yost, 479 F.3d 815, 819 (11th Cir. 2007) (per curiam); United States v. Root, 296 F.3d 1222, 1227-28 (11th Cir. 2002).

As Judge Johnson noted, the law in this Circuit clearly establishes that communicating with a fictitious minor regarding sex and arranging to meet the minor for sex satisfies the intent element of an attempt in violation of § 2422(b). United States v. Rothenberg, 610 F.3d 621, 626 (11th Cir. 2010) (noting that fictitious minor is sufficient to prove attempted exploitation if defendant believed minor was involved); see also Yost, 479 F.3d at 819 (same). The United States Court of Appeals for the Eleventh Circuit has concluded that the second element--a substantial step--was

19

satisfied where the defendant engaged in sexually explicit communications with the alleged minors, called one alleged minor on the telephone and arranged to meet her for sex, although he failed to appear at the meeting, and made arrangements to meet the other minor for sex and arrived at that set time and place. Yost, 479 F.3d at 819-20.

The Court agrees with Judge Johnson that the testimony presented at the August 30, 2010 evidentiary hearing reveals that Defendant engaged in communications and actions similar to those discussed in Yost, evidencing both his specific intent and substantial steps to entice minors to engage in criminal sexual activity. (Report & Recommendation at 12.) As Judge Johnson noted, with respect to the first element, Defendant initiated contact with

undercover officers after reading a Craig's List post purportedly submitted by two girls, ages fourteen and fifteen. (Tr. I at 30-39.) Internet and telephone communications culminated in Defendant renting a motel room and arranging to meet the "girls." (Id. at 6, 32-33.) As Judge Johnson observed, when the "girls" expressed concern that they did not want to become pregnant as a result of meeting Defendant, Defendant agreed to bring condoms. (Id. at 6, 39.) The Court agrees with Judge Johnson that those communications, made directly from Defendant, evidence Defendant's intent to entice the minors to have sexual intercourse with him. (Report & Recommendation at 13.) With respect to the second element, Judge Johnson correctly found that Defendant's

act of arranging to meet minors to engage in sexual activity, renting a motel room for that purpose, calling the "girls," and telling them to come to a specific motel and room where Defendant was, taken as a whole, corroborate Defendant's intent and constitute substantial steps to engage in criminal activity. (Id.)

For the reasons discussed above, the Court agrees with Judge Johnson that the officers had knowledge that would lead a reasonably cautious person to believe that Defendant attempted to entice minors to engage in criminal sexual activity. Judge Johnson thus correctly found that the officers had probable cause to arrest Defendant for violating 18 U.S.C. § 2422(b). The Court therefore adopts this

22

portion of the Report and Recommendation, and overrules Defendant's corresponding Objections.

## B. The Warrantless Arrest In Room 210

As Judge Johnson noted, probable cause, standing alone, is not sufficient to allow a warrantless entry into a residence, including a motel room. (Report & Recommendation at 14.) A warrantless entry, however, is permissible if the occupant consents or if exigent circumstances, such as the destruction of evidence, necessitate immediate action. McClish v. Nugent, 483 F.3d 1231, 1240-41 (11th Cir. 2007). An officer who conducts a warrantless search or seizure inside a residence bears the burden of proving his conduct was justified. Id. at 1241.

The Court agrees with Judge Johnson that:

> The undisputed evidence shows that, after Defendant told the undercover officer that he was in Room 210 of the Super 8 Motel, the officers arrived at that location, stood outside Room 210 with their backs against the wall, and knocked on the door. When [Defendant] opened the door, the officers immediately stepped into the motel room and placed [D]efendant in handcuffs. (I' Tr. 7-10, 34-35, 42.) Thus, there is no dispute that [Defendant] did not give the officers permission to enter Room 210.

(Report & Recommendation at 14-15.)

The Government argues that exigent circumstances justified the officers' warrantless entry into the motel room. "The exigent circumstances exception to the warrant requirement is based on the understanding that in some situations, 'a warrantless entry by criminal law enforcement officials may be legal when there is compelling need for

24

official action and no time to secure a warrant.'" Bates v.

Harvey, 518 F.3d 1233, 1245 (11th Cir. 2008) (quoting

Michigan v. Tyler, 436 U.S. 499, 509 (1978)). When

determining whether exigent circumstances justify a

warrantless entry to effect an arrest, the Court considers the

following factors:

> (1) the gravity or violent nature of the offense with
> which the suspect is to be charged; (2) a
> reasonable belief that the suspect is armed; (3)
> probable cause to believe that the suspect
> committed the crime; (4) strong reason to believe
> that the suspect is in the premises being entered;
> (5) a likelihood that delay could cause the escape
> of the suspect or the destruction of essential
> evidence, or jeopardize the safety of officers or the
> public.

United States v. Standridge, 810 F.2d 1034, 1037 (11th Cir.

1987) (per curiam); see also Parker v. Allen, 565 F.3d 1258,

25

1289-90 (11th Cir. 2009) (applying factors in context of federal habeas case).

Exigent circumstances, however, ordinarily will not exist "'where the suspect[] [is] unaware of police surveillance.'" United States v. Santa, 236 F.3d 662, 669-70 (11th Cir. 2000) (quoting United States v. Tobin, 923 F.2d 1506, 1511 (11th Cir. 1991)). "Mere speculation about [a suspect's] suspicions, any without factual support, is not enough to overcome the warrant requirement." Id. at 671. "[T]he test of whether exigent circumstances exist is an objective one," and police may not create exigent circumstances in lieu of obtaining a warrant. Id. at 669-70.

Here, the Government contends that the warrantless entry to arrest Defendant was appropriate because

Defendant's ultimate objective was to commit a violent

crime, because Defendant was in a definite location, and

because any delay would have allowed Defendant to flee or

to destroy evidence of the crime. (Gov't Resp. at 12.) The

Court agrees with Judge Johnson that:

Although enticement of a minor violates § 2422(b), there was no indication that [D]efendant was armed or that delaying his apprehension posed a danger to the officers or the public. Indeed, the undercover agents were posing as the "girls" [D]efendant intended to meet, so there was no threat of immediate harm to a minor at that time. Moreover, given [D]efendant's definite location, the officers could have maintained surveillance of Room 210 while obtaining (even via telephone) a search warrant for "the person" of the suspect in Room 210. If [D]efendant had emerged from Room 210 before a warrant was obtained, the officers could have effectuated a valid public arrest.

27

(Report & Recommendation at 16-17.) Judge Johnson also

correctly noted that the evidence in the record did not

support the Government's argument that a warrantless

entry was necessary to keep Defendant from destroying

evidence. (Id. at 17.) As Judge Johnson noted:

> The record evidence does not indicate how soon [Defendant] expected the "girls" to arrive at Room 210 after he relayed his location in a telephone call with the undercover agent. Likewise, there is no evidence that [Defendant] had become aware that he was under police investigation or suspected the "girls" were not going to arrive. Unaware of an impending arrest, [Defendant] had no reason to flee or to destroy evidence in Room 210. Furthermore, there is no evidence in the record indicating that the officers seized the motel room to prevent the destruction of evidence until a search warrant could be obtained. Rather, Detective Scroggins testified that the officers' purpose in entering Room 210 was to arrest [Defendant].

(Id.)

As discussed above, the Court agrees with Judge Johnson that the Government failed to satisfy its burden to prove that exigent circumstances existed to justify the warrantless entry into the motel room. Judge Johnson therefore correctly found that the warrantless entry into the motel room and Defendant's arrest were illegal. The Court next proceeds to determine whether Defendant validly consented to the subsequent searches of the motel room and of his vehicle.

## C. Defendant's Post-Arrest Consent To Search The Room And Vehicle

To be valid, a consent to search given after an illegal seizure must (1) be voluntary and (2) may not be the product of the illegal detention. Santa, 236 F.3d at 676. The first prong of the consent analysis focuses on whether

29

the consent was the product of the defendant's free will and is determined by the totality of the circumstances. Brown v. Illinois, 422 U.S. 590, 601-02 (1975); United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001). The second prong focuses on causation--that is, determining whether consent was "sufficiently an act of free will to purge the primary taint of the unlawful invasion." Wong Sun v. United States, 371 U.S. 471, 486 (1963) (explaining that not all evidence resulting from illegal police action is poisoned fruit, but that appropriate question is whether evidence was obtained by exploiting the illegal action). When making the causation determination, the Court considers the following factors: (1) the temporal proximity of the arrest and the consent to the search, (2) intervening circumstances, and

30

(3) the purpose and flagrancy of the official misconduct.

<u>Santa</u>, 236 F.3d at 677.

The Court agrees with Judge Johnson that, even assuming that Defendant voluntarily consented to the search, thus satisfying the first prong, the second prong is not satisfied here. As Judge Johnson observed:

> With regard to the first causation factor, [Defendant] signed the consent form at 5:27 p.m., less than ten minutes after police illegally entered Room 210 and arrested him at 5:19 p.m. The second factor also counsels against admitting the evidence obtained from that search. The officers had already begun searching the motel room in [D]efendant's presence, including entering closed containers, while he reviewed and signed the form. Under those circumstances, the consent form alone is not an intervening circumstance sufficient to purge the taint of that unlawful invasion. <u>See Santa</u>, 236 F.3d at 678 (finding consent form signed after search complete insufficient to purge taint of illegal arrest). Likewise, the third causation factor weighs in favor of excluding the evidence at

issue. As discussed supra Part IV.B, the officers' stated purpose in entering Room 210 without a warrant was to seize [D]efendant.

(Report & Recommendation at 19.)

The Court agrees with Judge Johnson that, under the totality of the circumstances, Defendant's consent to the search of Room 210 and his vehicle was the product of an illegal detention. As Judge Johnson noted, even assuming that Defendant's consent was voluntary and uncoerced, that consent was not sufficiently separated from the taint of the illegal entry and seizure to render the resulting evidence admissible. Judge Johnson therefore correctly recommended that the Court grant the portion of Defendant's Motion to Suppress Illegally Seized Evidence that seeks to exclude the evidence obtained from the

search of Room 210 and from Defendant's vehicle. The Court consequently adopts this portion of the Report and Recommendation, and overrules the corresponding Objections.

## D. Identity Evidence And Prior Conviction

Defendant also has requested that the Court suppress evidence of Defendant's identity and prior conviction as fruits of the illegal seizure. As Judge Johnson noted, however, Defendant "cites no authority to support his request to suppress his identity and prior conviction as fruit of the illegal seizure." (Report & Recommendation at 20.) The Court agrees with Judge Johnson that this evidence is admissible pursuant to the decision of the United States Court of Appeals for the Eleventh Circuit in United States v.

33

Farias-Gonzalez, 556 F.3d 1181 (11th Cir. 2009). (Id. at 20-22.) In Farias-Gonzalez, the Eleventh Circuit permitted the introduction in a criminal prosecution of identity-related evidence obtained via an illegal arrest. 556 F.3d at 1185-90 (holding that "exclusionary rule does not apply to evidence to establish the defendant's identity in a criminal prosecution"). In that case, the Eleventh Circuit found that the social cost of excluding the defendant's identity and criminal history outweighed the deterrence benefit of excluding that evidence. Id. at 1186-89. The court compared the social cost of permitting a defendant to hide his identity--that is, the undermining of the criminal justice system--with the possible benefits of applying the exclusionary rule to identity-related evidence--a minimal

incentive to reduce Fourth Amendment violations. Id. at 1186-89. After applying that analysis, the court also concluded that the defendant's alien file, including his deportation history, was admissible. Id. at 1189.

As Judge Johnson observed, although Defendant's illegal arrest triggers the potential application of the exclusionary rule, that illegal arrest does not require suppression of his identity and any prior convictions that are relevant and otherwise admissible. (Report & Recommendation at 22.) For the reasons discussed supra Part III.A., the Government had probable cause to arrest Defendant for attempting to entice minors to engage in criminal sexual activity. (Id.) The officers admittedly learned Defendant's identity through an illegal seizure;

however, that information was freely obtainable without violating the Fourth Amendment. (Id.) Indeed, as Judge Johnson noted, the officers would have learned Defendant's name if they had waited for Defendant to emerge from Room 210 or if they had obtained a search warrant for the individual in Room 210. (Id.) As Judge Johnson also observed, even if the Court suppressed evidence of Defendant's identity, the Government could obtain that information by other means and re-indict Defendant, thereby also learning Defendant's criminal history. (Id.) Judge Johnson therefore correctly reasoned that "the cost of suppressing [Defendant's] identity and prior conviction is high and is not outweighed by the minimal (if any) deterrence benefit of suppressing it."

36

For the reasons discussed above, Judge Johnson correctly recommended that the Court deny the portion of Defendant's Motion to Suppress Illegally Seized Evidence that sought to exclude evidence of Defendant's identity and prior conviction. The Court consequently adopts this portion of the Report and Recommendation, and overrules Defendant's corresponding Objections.[12]

---

[12]In his Objections, Defendant states:

While [Defendant] recognizes the binding precedent of the Eleventh Circuit relied on by the Magistrate Judge, which compels the Magistrate Judge's recommendation to deny his motion to suppress his identity and prior conviction, [Defendant] objects to this finding and legal conclusion in order to preserve this issue for future litigation. [Defendant] recognizes that there is a split between Circuits on this issue, but that this Court is bound by the Eleventh Circuit.

(Def.'s Objections at 2-3.)  As Defendant recognizes, the Court is not free to disregard the Eleventh Circuit's Farias-Gonzalez decision.  The Court therefore overrules this portion of Defendant's

## E. Custodial Statement

Defendant also seeks to suppress his custodial statement taken at the Catoosa County Sheriff's Office, arguing that this evidence is "fruit of the poisonous tree." (Def.'s Br. at 16.) As Judge Johnson noted, the Supreme Court rejected a similar argument in New York v. Harris, 495 U.S. 14 (1990), holding that, "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the [Government's] use of a statement made by the defendant outside of his home, even though the statement is taken after an [illegal] arrest in the home . . . ." 495 U.S. at 21. The Court therefore overrules Defendant's

---

Objections.

38

corresponding Objections, and denies this portion of Defendant's Motion to Suppress Statements.[13]

Defendant, however, also argues that his Mirandized confession was coerced and involuntary. For the following reasons, the Court agrees with Judge Johnson that Defendant's confession was voluntary and is admissible.

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court noted that, "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is

[13]In his Objections, Defendant contends that the officers lacked probable cause to arrest him. (Def.'s Objections at 4.) For the reasons set forth supra Part III.A., the Court finds that the officers had probable cause to arrest Defendant. The Court consequently overrules this portion of Defendant's Objections.

jeopardized." 384 U.S. at 478. Those Miranda warnings "are required before any statement may be admitted into evidence at trial which was elicited from a person in custody through interrogation." Endress v. Dugger, 880 F.2d 1244, 1248 (11th Cir. 1989). When determining whether a confession or self-incriminating statement is admissible based on a Miranda waiver, the Court conducts a two-part inquiry, and may find such a waiver valid only if the totality of the circumstances show both of the following: (1) an uncoerced choice and (2) an awareness "of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986).

Here, Defendant does not argue that the officers failed

properly to advise him of his Miranda rights or that he did

not understand those rights. Instead, Defendant contends

that Detective Scroggins coerced him into signing the

Miranda form by threatening to make his arrest public and

embarrass him in the media if he did not cooperate. As

Judge Johnson noted, the videotaped recording presented

during the evidentiary hearing does not support this

argument. (Report & Recommendation at 24-25.) Judge

Johnson correctly observed:

> Detective Scroggins explained to [Defendant] that
> the officers preferred that [D]efendant's arrest
> receive no publicity and simply encouraged him to
> cooperate. "An official who encourages
> cooperation with the government and who informs
> the defendant of realistically expected penalties for
> cooperation and/or non-cooperation does not offer
> an illegal inducement." United States v. Mendoza-

41

Cecelia, 963 F.2d 1467, 4175 (11th Cir. 1992), abrogated on other grounds by Coleman v. Singletary, 30 F.3d 1420 (11th Cir. 1994). Here, Detective Scroggins's statement cannot reasonably be considered a threat to ·publicize [Defendant's] arrest or an indication that [D]efendant would suffer such a "penalty" if he did not cooperate. Rather, it is clear that Detective Scroggins requested [D]efendant's cooperation and did not want the task force's investigation methods publicized. Thus, the undersigned reports that defendant's Miranda waiver was uncoerced.

(Id. at 24-25.) The Court agrees with Judge Johnson that

Defendant's Miranda waiver was indeed uncoerced, and

overrules Defendant's corresponding Objections.

The Court, however, must consider whether

Defendant's statement was voluntary. When making this

determination, the Court must examine the "totality of the

circumstances, including the details of the interrogation and

42

the defendant's characteristics." United States v. Bernal-Benitez, 594 F.3d 1303, 1319 (11th Cir. 2010). Factors relevant to that determination include "the [accused's] lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." Id. (internal quotations and citations omitted) (alteration in original). Where, as here, a defendant gives a Mirandized statement after an illegal arrest, the Court must consider whether it is tainted by the prior illegality. United States v. Edmondson, 791 F.2d 1512, 1515 (11th Cir. 1986). The following factors are relevant to that determination: (1) the temporal proximity of

the arrest and the consent to the search, (2) intervening

circumstances, and (3) the purpose and flagrancy of the

official misconduct. Santa, 236 F.3d at 677.

The Court agrees with Judge Johnson that, under the

totality of the circumstances, Defendant's custodial

statement is voluntary. As Judge Johnson noted:

> Defendant is a high school graduate and told
> Detective Scroggins that he is able to read and
> write well. Detective Scroggins unhandcuffed
> [D]efendant, administered the Miranda rights, and
> thoroughly reviewed those rights with him.
> [Defendant] further reviewed the Miranda form
> before signing it. At that point, Ms. Slaughter had
> not been detained a lengthy period of time and
> there is no evidence that he was punished or
> deprived of anything during the detention.

(Report & Recommendation at 26 (citations omitted).) The

Court therefore agrees with Judge Johnson that

Defendant's custodial statement was voluntary, and overrules Defendant's corresponding Objections.

Judge Johnson also correctly found that Defendant's custodial statement "was sufficiently attenuated from the illegal arrest by time and intervening factors, thereby purging the primary taint." (Report & Recommendation at 27.) As Judge Johnson noted:

[Defendant] made his statement approximately forty-five minutes after his illegal arrest. The officers did not question [D]efendant in his motel room and there is no evidence that [Defendant] made any statements there. Rather, the officers removed [Defendant] to an administrative room in the Catoosa County Sheriff's Office, unhandcuffed him, provided him with his eyeglasses, read and explained his Miranda rights, and allowed him to review the Miranda form (which he signed) before he made the statement at issue. See Edmondson. 791 F.2d at 1515-16 (finding confession admissible and sufficiently purged of taint where defendant made statement forty-five minutes after

illegal arrest, away from scene of arrest, after twice being advised of Miranda rights, and initiated the confession).  Finally, as discussed supra Part IV.A, the officers had probable cause to arrest [Defendant]; thus, he was lawfully in custody when Detective Scroggins questioned him at the Catoosa County Sheriff's Office.  See Harris, 495 U.S. at 18 (although warrantless arrest in home was illegal, probable cause supported arrest; thus, defendant was lawfully in custody when police immediately transported him to station for questioning).

(Id. at 27-28 (footnote omitted).)  Judge Johnson further correctly rejected Defendant's argument that his custodial statement is inadmissible because his Miranda waiver was tainted by knowledge that the officers had recovered incriminating evidence from Room 210.  (Id. at 27 n.12.) The Court consequently agrees with Judge Johnson that Defendant's custodial statement was sufficiently attenuated

46

from the illegal arrest by time and intervening factors to purge the taint of the illegal arrest.[14]

For the reasons discussed above, Judge Johnson properly found that, under the totality of the circumstances, Defendant's custodial statement did not result from coercion or an illegal seizure, but instead resulted from a belief that cooperating with law enforcement was in Defendant's best interest. The Court further agrees with Judge Johnson that Defendant made an uncoerced and knowing waiver of his Miranda rights, and that his subsequent custodial statement

---

[14]In support of his argument that his confession was involuntary because it was inextricably linked to the illegal search, Defendant cites United States v. Baldwin, 114 F. App'x 675 (6th Cir. 2004) and Libby v. State, 561 So. 2d 1253 (Fla. Dist. Ct. App. 1990). Neither of those cases are binding authority for this Court, and the Court will not reject the Report and Recommendation based on those cases.

was voluntary. Judge Johnson therefore correctly recommended that the Court deny Defendant's Motion to Suppress Statements.

For the reasons discussed above, Judge Johnson properly recommended that the Court deny Defendant's Motion to Suppress Statements. The Court therefore adopts this portion of the Report and Recommendation, overrules Defendant's corresponding Objections, and denies Defendant's Motion to Suppress Statements.

## V. Conclusion

ACCORDINGLY, the Court **ADOPTS** the Non-Final Report and Recommendation of United States Magistrate Judge Walter E. Johnson [27], **OVERRULES** Defendant's Objections to the Report and Recommendation [29],

**GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Suppress Illegally Seized Evidence [11], and **DENIES** Defendant's Motion to Suppress Statements [10]. The Court **GRANTS** the Motion to Suppress Illegally Seized Evidence with respect to the evidence seized from Defendant's motel room and vehicle, but **DENIES** the portion of the Motion that seeks to exclude evidence of Defendant's identity and prior conviction.

IT IS SO ORDERED, this the 6 day of April, 2011.

_____

UNITED STATES DISTRICT JUDGE